## Peter Burr *v.* Simon Mazer, Appellant.

*Mechanics' liens—Abandonment by contractor as affecting subcontractor.*

A contractor having defaulted and the building being completed by another contractor such abandonment, after a subcontractor has completed the work he undertook to do, cannot extinguish the latter's right to file a lien which had already accrued.

*Statute of frauds—Collateral and original undertakings.*

A promise will not be held a collateral, as distinguished from an original

undertaking, which must be put in writing to be binding, where, upon the whole transaction, the fair inference is that the leading object or purpose and the effect of the transaction was the purchase or acquisition by the promisor from the promisee of some property, lien or benefit which he did not before possess, but which would enure to him by reason of his promise so that the debt for which he is liable may fairly be deemed to be a debt of his own contracted in such purchase or acquisition.

*Statute of frauds—Waiver of lien on verbal promise.*

A promise in form to pay or answer for the debt of another which is accepted by the promisee in lieu of his claim against the original debtor so that the latter is extinguished is not within the statute.

A contractor waived his lien against a church building on a promise made by a trustee of the church in the following language: " For God's sake don't shame me and our church, I will pay if you don't lien." *Held,* not to be within the statute.

Argued April 7, 1896. Appeal, No. 61, April T., 1896, by defendant, from judgment of C. P. No. 1, Allegheny County, March T., 1895, No. 258, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Appeal by defendant from judgment of alderman in favor of plaintiff.

It appeared from the evidence that on April 15, 1893, the congregation Agudis Hachim, a corporation of the first class, located at Pittsburg, entered into a written contract with William Thomas to erect and build a synagogue in said city for the price or sum of $11,000, $1,000 of which was to be paid when the excavation for the foundation was completed. The contract was executed under the seal of the corporation and effected through Simon Mazer, the defendant in this case, and others, its trustees.

Thomas sublet the excavation of the foundation to Peter Burr, the plaintiff in this case. As soon as the excavation was done Thomas went to the trustees and obtained their note for $1,000, which he had discounted, pocketed the proceeds, abandoned the work and refused to pay Burr for excavating the foundation. After Burr completed the excavation he presented his bill to Thomas who refused to pay him. He then presented his bill to the trustees of the church and claimed that the defendants then promised that they would pay him. The church

438        BURR *v.* MAZER, Appellant.

Statement of Facts—Charge of Court.        [2 Super. Ct.

was subsequently finished by another contractor. Just before plaintiff's right to lien the church property would have been lost it was alleged that defendant promised to pay him personally if he forbore filing his lien; that as a consequence he did not file the lien.

The defendant asked for binding instructions which were refused. [3]

COLLIER, J., charged the jury as follows:

This case turns altogether upon the evidence as you may find it to exist. The plaintiff says he was employed by the contractor to do some excavating—the work that you heard about in the testimony, and the amount will be given to you by the counsel for plaintiff in his statement. He alleges that after he had done the work, not being able to get anything from the contractor, he mentioned the matter to the defendant, Mr. Mazer, who it seems was one of the trustees of the church and the man who oversaw and managed matters about the building for this congregation, and who knew that the plaintiff had done this work. The plaintiff alleges that the defendant promised to pay him for his work. Now that, by itself, wouldn't amount to anything. That promise to pay the debt of another would be invalid unless it was in writing, but he alleges that that kept up for some time; that a week before the time expired in which he could file a lien, and which would have held the property and got him his money, he again went to the defendant and told him that he must have his money and that if he didn't get it he would file a lien against the building. He alleges that the defendant's answer was, "For God's sake, don't do that; I'll pay you," and that, relying upon that promise he didn't file his lien, and his remedy against the church is forever gone. He alleges that upon the strength of that promise he didn't file his lien. Now the question arises whether, under such circumstances, the law will hold the defendant liable personally, and I say to you that if you believe those are the facts, it would make the defendant liable. [1]

Now the defendant's side is this : That he never made any promises at all that he would pay it, but anything he did say was on behalf of the church ; that he didn't promise these things at all. Now, if you find that the defendant's story is

correct, that he didn't make any of these promises, or what he was talking about was understood by the plaintiff to belong to the matters of the church, then the plaintiff could not recover; but if you find that it is as the plaintiff states, that he acted on it, that he lost his lien through it and that the defendant didn't say it was on behalf of the church, he would be individually liable and your verdict should be for the plaintiff. If you believe the defendant's story to be correct, it should be for the defendant. [2]

Verdict and judgment for plaintiff for $230.50. Defendant appealed.

*Errors assigned* were, (1, 2) to portions of the judge's charge, reciting same ; (3) refusal of binding instructions for defendant.

*Iams & Brock* for appellant.

*A. P. Burgwin* and *George C. Burgwin*, for appellee.

Opinion by Rice, P. J., October 12, 1896 :

At the time the promise was made the plaintiff had a valid lien upon the church property which he could have enforced by filing his claim within the time prescribed by statute and proceeding thereon by sci. fa. This proposition is questioned upon the ground that where a contractor for the erection of a building abandons the contract before completion and the erection of the building is completed under another contractor the subcontractor loses his right to file a lien. But we are unable to agree to this. Treating the contractor as the owner's agent for the time being, as in a sense he is, his abandonment of the contract after the subcontractor has completed the work he undertook to do, cannot extinguish the latter's right to file a lien which had already accrued. If the building had not been completed, a different question would be presented.

In a sense therefore the church property was the plaintiff's debtor. The verdict of the jury establishes the fact that he was induced by the defendant to forego his right to file a lien—to give up his claim on the property—upon the defendant's distinct promise to pay the debt. The defendant was a member

and trustee of the church and had had charge of the erection of the building. Furthermore his expressed motive for desiring the plaintiff to forbear filing a lien was to save himself from shame. His language was: "For God's sake don't shame me and our church, I will pay you if you don't lien." The plaintiff then and there agreed not to file a lien. His testimony is: "So I promised I wouldn't and he said he would truly pay me."

The question is, whether the defendant's promise not being in writing was void under the statute of frauds.

A promise in form to pay or answer for the debt of another which is accepted by the promisee in lieu of his claim against the original debtor so that the latter is extinguished is not within the statute.

In Maule v. Bucknell, 50 Pa. 39, Judge STRONG in recognition of this principle said: "It is undoubtedly true that a promise to answer for the debt or default of another is not within the statute unless it be collateral to a continued liability of the original debtor. If it be a substitute, an arrangement by which the debt of the other is extinguished, as where the creditor gives up his claim on his original debtor and accepts the new promise in lieu thereof it need not be in writing." This language was quoted with approval in Nugent v. Wolfe, 111 Pa. 471–480, and in Dougherty v. Bash, 167 Pa. 429, 434, and the doctrine is generally conceded to be correct: De Colyer on Guarantees, *88; 1 Reed on Stat. of Frauds, 106; Baylies on Guarantees, 74; Wood v. Corcoran, 1 Allen (Mass.), 405; Watson v. Jacoby, 29 Vt. 160; Cowenhoven v. Howell, 36 N. J. L. 323; Goodman v. Chase, 1 B. & Ald. 297; Fitzgerald v. Dresser, 7 C. B. N. S. 374; Kelsey v. Hibbs, 13 Oh. (N. S.) 346; Butcher v. Stewart, 11 M. & W. 857; Meriden Brit. Co. v. Zingsen, 48 N. Y. 247; Mulcrone v. Am. Lumber Co., 55 Mich. 622; Thornton v. Guise, 73 Ala. 321.

If, therefore, the only persons concerned in this transaction were the plaintiff, the defendant and the owner of the building, there would be no difficulty in holding that the promise was valid and binding.

But as the plaintiff was a subcontractor and as the personal liability of the contractor remains, it is argued that the promise

was a collateral, and not an original undertaking and therefore should have been put in writing to be binding.

The fact that the original debtor is not discharged from liability is not conclusive of the question. One instance is where there is a transfer of a fund to the promisor for the payment of the debt, or where property charged with the payment of the debt is transferred to him on his promise to the vendor to pay the debt: Townsend v. Long, 77 Pa. 143; Maule v. Bucknell, 50 Pa. 39; Dock v. Boyd, 93 Pa. 92; Justice v. Tallman, 86 Pa. 147; Arnold v. Stedman, 45 Pa. 186; Fehlinger v. Wood, 134 Pa. 517. Another instance is where the leading object of the promisor is to subserve some interest or purpose of his own: Nugent v. Wolfe, 111 Pa. 471–480; Elkin v. Timlin, 151 Pa. 491; Arnold v. Stedman, 45 Pa. 186. In both of these classes of cases, it is held that the promise is not within the statute notwithstanding the effect is to pay or discharge the debt of another. The rule as to cases of the latter class has been stated in various ways, but this statement thereof is both clear and comprehensive, and is in harmony with the best considered cases. The promise is said not to be within the statute, " where upon the whole transaction, the fair inference is that the leading object or purpose and the effect of the transaction was the purchase or acquisition by the promisor from the promisee of some property, lien, or benefit which he did not before possess but which would enure to him by reason of his promise so that the debt for which he is liable may fairly be deemed to be a debt of his own contracted in such purchase or acquisition : " Ames v. Foster, 106 Mass. 402. But giving up a lien where a personal liability remains and where the defendant had no interest in the matter will not take the case out of the statute. The consideration must so move to the promisor as to make the transaction a matter of personal concern to him : Cowenhoven v. Howell, 36 N. J. L. 323.

It is argued that the mere interest of the defendant as a member and trustee of the church corporation was not such as, of itself, would take his oral promise to pay a debt of the church out of the statute. But in addition to that there was evidence that he had principal charge of the erection of the building, and that a part of the plaintiff's claim was for extra work ordered by him. Furthermore, on June 3d he had written to the plain-

tiff as follows : " Please call to see me at once. I want to pay
you for your work done on our church." He did not pay, and
when the plaintiff, wearied with being put off, threatened to
file a lien, he made the promise in question. Just how he
would be put to shame is left to inference, and perhaps even
surmise, but that he believed he would be and that his desire to
avoid it was one of his motives in making the promise is evident
from his own declaration. It is held in the application of the
" funds " rule that where one promises to pay a debt for which
he is not legally liable, declaring that the debtor had placed
funds in his hands to pay it and in consideration of the promise
the plaintiff forbears to bring suit, the fact that he had received
a fund for the purpose may be inferred from his declaration
alone : Hilton v. Dinsmore, 21 Me. 413 ; Busbee v. Allen, 31
Vt. 634. Where the defendant Robinson having had an attach-
ment by other parties issued against him and having been un-
willing to fully answer interrogatories promised the plaintiff
Gillman, who was about to issue an attachment, to pay the debt,
which was the subject of the attachment, the court held that
the statute did not apply. The benefit to be derived from Gill-
man's omission to sue was wholly Robinson's. " The promise
to pay was an admission or might be regarded as an admission
by the jury, that he had property for which he might be charged
to the amount of these notes : " Gillman v. Robinson, 43 N. H.
491. Where at the time of making the promise the defendant
said that he had money or other property of the debtor's in his
hands and he would sell it and pay the plaintiffs, it was held in an
action against him, that even in the absence of evidence that he
had such property of the debtor's " he would have been estopped
by his own declarations, upon the faith of which his verbal
promise to pay the debt was accepted : " Dock v. Boyd, 93 Pa.
92. Suppose that the defendant had said to the plaintiff, as in
effect he did say : " If you should file a lien against the church
it will put me to shame and if you will save me therefrom by
not filing a lien I will pay the claim," might it not be fairly
inferred from the whole transaction, including the defendant's
declarations and the other circumstances to which I have alluded,
that it was a matter of personal concern and that the leading
object and the effect of the transaction was to subserve some
interest or purpose of his own. When it is considered further

that by the plaintiff's acceptance of the defendant's offer all liability of the church corporation and of its property was extinguished and the personal liability of the defendant was substituted therefor, we think it safe to say that the transaction was not within the statute.

Judgment affirmed.